UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 04-CV-81079-RYSKAMP-VITUNAC

DEVON MORRISON,

  Plaintiff,

VERSUS

EXECUTIVE AIRCRAFT REFINISHING, INC.,
and MARK TURI, individually,

  Defendants.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## PLAINTIFF'S MOTION TO STRIKE CERTAIN OF DEFENDANTS' AFFIRMATIVE DEFENSES, AND INCORPORATED MEMORANDUM OF LAW

  Plaintiff, Devon Morrison, on behalf of himself and similarly situated employees of

Defendants, and through undersigned counsel, hereby moves this Honorable Court for an order

striking certain of Defendants' affirmative defenses pursuant to Federal Rule of Civil Procedure

12(f) for the following reasons:

### CERTIFICATE OF COUNSEL

  The undersigned counsel hereby certifies that he has attempted in good faith to confer

with Todd W. Shulby, Esq., counsel for Defendants, to attempt to resolve the issues which are

being raised in this Motion.  Specifically, on or about February 28, 2005, the undersigned mailed

and faxed Mr. Shulby a letter asking that his clients amend their answer with respect to the

defenses addressed in this Motion.  *See* February 28, 2005 Correspondence from William N.

Hershman, Esq. to Todd W. Shulby, Esq., attached hereto as Exhibit "A".[1]  As of the time of

filing this motion, the undersigned has received no substantive response to that letter from Mr.

Shulby.

INTRODUCTION

Plaintiff, Devon Morrison, brought this Fair Labor Standards Act ("FLSA") collective

action alleging that Defendants violated the FLSA by failing to compensate him and similarly

situated employees at no less than the statutorily-mandated overtime rate of one and one-half

times their regular rates of pay for hours worked in excess of 40 hours per week.  He is filing the

Motion to Strike which is the subject of this brief because Defendants have raised several

defenses upon which they cannot possibly prevail under any set of facts, and thus, which cannot

survive a Rule 12(b)(6) challenge.  Mr. Morrison is asking that those defenses be stricken

without leave to amend, so that the parties will not have to waste additional time litigating them.

In addition, several other of their defenses have been pled too generally to inform Mr.

Morrison of the grounds upon which they rest, and to permit the Court to test their worth.  Mr.

Morrison is asking that these other defenses be stricken with leave to amend, to give Defendants

an opportunity to plead them in a manner that satisfies the minimum requirements of Rules 8 and

9 (assuming that they can do so and still comply with Rule 11).

It is well-settled that striking invalid defenses serves to streamline litigation and to reduce

litigation costs.  The Court will eventually have to address the legal issues underlying these

---

[1] The undersigned also enclosed the Southern District's order in *Mallia, infra*, granting in part motion to strike defenses, along with his February 28, 2005 correspondence to Mr. Shulby. Because Mr. Morrison is attaching that order as Exhibit "B" to this Motion, he is omitting the identical enclosure from that letter.

invalid defenses anyway. Doing so early in the litigation is highly desirable because it will prevent the Court and the parties from having to waste additional time litigating issues relating to defenses which should have never been raised in this case anyway. For example, with respect to those defenses which fail to satisfy Rule 12(b)(6), the parties will save time and resources that they would have spent conducting discovery regarding invalid issues, and the Court will save time and resources resolving such discovery issues.

The foregoing considerations have particular application to this case, because it has been brought as a Fair Labor Standards Act ("FLSA") collective action, not only on Mr. Morrison's behalf, but also on behalf of similarly situated employees. Thus, failing to address the issues raised in this Motion now is likely to result in a significant waste of resources litigating invalid issues with respect to numerous parties.

For the reasons discussed above, and set forth in more detail below, Mr. Morrison respectfully requests that this Honorable Court grant his Motion to Strike.

**ARGUMENT AND CITATION TO AUTHORITY**

A.    <u>STANDARD FOR MOTIONS TO STRIKE.</u>

"Affirmative defenses are pleadings and, therefore, are subject to all pleading requirements of the Federal Rules of Civil Procedure." *Heller Financial, Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1294 (7th Cir. 1989) (citation omitted).

> *Federal Rule of Civil Procedure 12(f)* authorizes this Court to strike defenses from a pleading which are insufficient as a matter of law. Those defenses which are insufficient as a matter of law should be stricken 'in order to avoid unnecessary time and money in litigating invalid and spurious issues.' *Anchor Hocking Corp. v. Jacksonville Elec. Auth.*, 419 F. Supp. 992, 1000 (M.D. Fla. 1976).

*Lafayette Corp., Ltd v. Bank of Boston Int'l South & Algemene Bank Nederland, N.V.*, 723 F.
Supp. 1461, 1466 (S.D. Fla. 1989).[2]

"[C]ourts have recognized that such motions may serve to hasten resolution of cases by
eliminating the need for discovery, which in turn saves time and litigation expenses." *FDIC v.
Modular Homes, Inc.*, 859 F. Supp. 117, 120 (D.N.J. 1994). "If the determination of invalidity
can be made at an early stage it will enable the parties to proceed with the litigation in the proper
posture." *Owens v. Unum Life Ins. Co.*, 285 F. Supp. 2d 778, 780 (E.D. Tex. 2003) (citation
omitted).

Moreover, "affirmative defenses must meet the pleading requirements of *Fed. R. Civ. P.
(8)(a)*." *Flasza v. TNT Holland Motor Express, Inc.*, 155 F.R.D. 612, 613 (N.D. Ill. 1994) (citing
*Heller*, 883 F.2d at 1294). "Accordingly, affirmative defenses must set forth a 'short and plain
statement' of the defense asserted." *Id.* (citing *Heller*, 883 F.2d at 1294; Fed. R. Civ. P. 8(a)).
"If an affirmative defense is insufficient on its face, or comprises no more than 'bare bones
conclusory allegations,' it must be stricken." *Id.* at 613-14 (citing *Heller*, 883 F.2d at 1294-95).
*See also Modular Homes, Inc.*, 859 F. Supp. at 121 (citations omitted) ("Defenses that are
'nothing but bare bones conclusory allegations' can be stricken.")

To satisfy Rule 8, each defense must be pled with sufficient detail to alert the plaintiff of
the conduct which the defense purports to challenge, and to allow the Court to test the legal
merits of the defense. *See Conley v. Gibson*, 355 U.S. 41, 47 (1957) (pleading must provide the
opposing party fair notice of what the legal claim embodied therein is, and of the grounds upon

---

[2] *See also Heller*, 883 F.2d at 1294 ("Midwhey places great reliance on the general rule
that motions to strike are disfavored. . . . But where, as here, motions to strike remove
unnecessary clutter from the case, they serve to expedite, not delay.")

which it rests); *Fullman v. Graddick*, 739 F.2d 553, 556 (11th Cir. 1984) (quoting 2A J. Moore &

J. Lucas, *Moore's Federal Practice* para. 8.13 at 8-118 (2 ed. 1984)) ("[S]ufficient detail must be

given so that the defendant, and the Court, can obtain a fair idea of what the plaintiff is

complaining, and can see that there is some legal basis for recovery.")

B.   AT LEAST FOUR OF DEFENDANTS' DEFENSES FAIL TO STATE A CLAIM
     UNDER RULE 12(B)(6), SO THEY SHOULD BE STRICKEN WITHOUT LEAVE TO
     AMEND.

   1.   **Defendants' sixth defense, premised upon principles of waiver, estoppel, etc.,
        and the unrelated doctrine of laches, is unsustainable under any set of facts.**

In their sixth defense, Defendants allege that "[t]he action and/or the damages claimed in

this action are barred by waiver, estoppel (collateral or otherwise), laches, satisfaction, release or

agreement." Although it appears that Defendants' waiver, estoppel, satisfaction, release and

agreement allegations may all be related (it is impossible to tell with any certainty because each

such assertion is just a single word, with no statement of the legal elements or grounds thereof),

their laches defense is legally distinct, and will be addressed separately, below.

   a.   Laches is not a sustainable defense where Congress has established a statute of
        limitations, as it has for the FLSA.

"[S]eparation of powers principles dictate that federal courts not apply laches to bar a

federal statutory claim that is timely filed under an express federal statute of limitations." *Ashley

v. Boyle's Famous Corned Beef Co.*, 66 F.3d 164 (8th Cir. 1995). *See also United States v. Mack*,

295 U.S. 480, 489 (1935) ("Laches within the term of the statute of limitations is no defense at

law.") This principle was applied to a FLSA case in *Fleming v. Carpenters/Contractors

Cooperation Committee, Inc.*, 834 F. Supp. 323 (S.D. Cal. 1993). There, the defendant raised a

laches defense, and the plaintiff moved to strike it from the answer. The court not only granted

the motion to strike, but it also imposed Rule 11 sanctions against the defendant because there

was no good-faith basis to resist the plaintiff's motion to strike. *See id.* at 328. For all of the

same reasons, Defendants' laches defense should be stricken here.

> b.   FLSA rights cannot be relinquished, except in two very limited and specific
> situations, neither of which is alleged to exist, and neither of which actually exists,
> in this case.

"Because the FLSA was enacted to protect workers from the poor wages and long hours

that can result from great inequalities in bargaining power between employers and employees, the

FLSA's provisions are mandatory and, except in two narrow circumstances, are generally not

subject to bargaining, waiver, or modification by contract or settlement." *Stalnaker v. Novar*

*Corp.*, 293 F. Supp. 2d 1260, 1262 (M.D. Ala. 2003) (citing *Brooklyn Savings Bank v. O'Neil*,

324 U.S. 697, 706 (1945)). *See also Lynn's Food Store, Inc. v. United States*, 679 F.2d 1350,

1352 (11th Cir. 1982) (quoting *Barrentine v. Arkansas-Best Freight System*, 101 S. Ct. 1437,

1445 (1981)); *Durkin v. M.E. Waldron*, 130 F. Supp. 501, 508-09 (W.D. La. 1955) (citations

omitted) (rejecting defendants' estoppel defense because FLSA rights cannot be waived or

released).

Those "two narrow circumstances" are payments in full of back wages supervised by the

Secretary of Labor and accepted by the employee, *see Stalnaker*, 293 F. Supp. 2d at 1262 (citing

29 U.S.C. § 216(c); *Lynn's Food Stores*, 679 F.2d at 1352-53), and settlements of individual

FLSA actions reviewed and approved by the court. *See id.* at 1262-63 (citing *Lynn's Food*

*Stores*, 679 F.2d at 1354).[3] Tellingly, Defendants do not allege that either of these two "narrow

---

[3] These circumstances are not so much waivers of rights as the recognition that, in certain
limited circumstances, FLSA lawsuits may be settled. As discussed below, equitable defenses
such as waiver and estoppel are not cognizable in response to claims for money damages under

circumstances" apply in this case.  Thus, Defendants' conclusory, one-word, allegations of waiver, estoppel, laches, satisfaction, release and agreement should be stricken from their answer.[4]

c.    Defendants' sixth defense should be stricken for the additional reason that the legal theories alleged therein are equitable defenses, and, therefore, are not sustainable in response to Mr. Morrison's and similarly situated employees' claims for money damages.

Recently, in *Mallia v. Applied Card Systems, Inc.*, No. 04-80773-CIV-COHN, (S.D. Fla. January 4, 2005) (order granting in part motion to strike), attached hereto as Exhibit "B", the Southern District of Florida held that, because of its equitable nature, an unclean hands defense could not be sustained in response to a lawsuit for damages pursuant to the FLSA. *See id.* at 4-5. Initially, the court noted that the Eleventh Circuit had already held that "for violations of wage and overtime provisions, the FLSA 'does not list equitable relief as an available remedy in an employee suit.'" *Id.* at 5 (quoting, in part, *Bailey v. Gulf Coast Transp., Inc.*, 280 F.3d 1333, 1335 (11th Cir. 2002)).  The court then held that the unclean hands defense be "stricken because it attempts to assert an equitable defense to a damage claim." *See id.  See also Morgan v. Koch*, 419 F.2d 993, 996 (7th Cir. 1969) (defense of laches inapplicable to action at law).

Here, too, Defendants' sixth defense, premised upon the equitable doctrines of, *inter alia*, waiver, estoppel and laches, must be stricken without leave to amend because it attempts to assert equitable defenses to Mr. Morrison's claim for FLSA damages.

---

the FLSA.

[4] If Defendants believe they have a good-faith factual basis to allege that either of the two narrow circumstances identified in, *inter alia, Lynn's Food Stores, supra*, apply here, they should be required to specifically allege them, instead of couching them in waiver terms.  That way, Mr. Morrison will have fair notice of any such allegations.

2.    **Defendants' fifth defense, stating that Mr. Morrison has a duty to mitigate his damages, must be stricken because failure to mitigate is not a defense to a FLSA overtime action.**

In their fifth defense, Defendants allege that "Plaintiff has a duty to mitigate damages."[5] However, "the doctrine of mitigation . . . is inapplicable where damages are fixed at the time of the breach[.]" *Blenner v. Major Indoor Soccer League*, 1987 U.S. Dist. LEXIS 5992, *7 (N.D. Ill. 1987), *aff'd*, 840 F.2d 920 (7th Cir. 1988) (citing *Publishers Resources, Inc. v. Walker-Davis Publications, Inc.*, 762 F.2d 557, 560 (7th Cir. 1985)).[6] *See also Rametta v. Stella*, 572 A.2d 978, 983 (Conn. 1990) ("Since both the loss and the subsequent damages were fixed at that time, there was nothing the plaintiff could do further to mitigate them."); *DeKalb County Employees Fed. Credit Union v. D.L. Claborn Buick, Inc.*, 292 S.E.2d 507, 509 (Ga. App. 1982) (holding that a mitigation defense could not apply where "the amount of damages was fixed at the time that [the defendant] failed to comply with the terms of the conditional delivery of funds as clearly set out by the terms of the loan and the endorsement of the check.")

Here, along the same lines, an employer's liability under the FLSA becomes fixed, and damages accrue, when the employer fails to pay the employee the required overtime on the regular pay day for any workweek. *See* 29 C.F.R. § 779.21(b) ("The courts have held that a cause of action under the Fair Labor Standards Act for . . . unpaid overtime compensation and for

---

[5] "It is sometimes said that it is the 'duty' of the aggrieved party to mitigate damages, but this is misleading because he incurs no liability for his failure to act." Restat. 2d of Contracts, § 350(b). Thus, the defense, as alleged, is not even a defense at all. It is also unclear whether Defendants intend to allege that Mr. Morrison ever previously failed to mitigate his damages, or whether they are alleging that he has some duty in the future to mitigate his damages. Either way, any such defense is unsustainable in response to a FLSA lawsuit for unpaid overtime pay.

[6] A copy of the *Blenner* decision is attached hereto as Exhibit "C" for the Court's convenience.

liquidated damages 'accrues' when the employer fails to pay the required compensation for any workweek at the regular pay day for the period in which the workweek ends."). *See also* 29 C.F.R. § 778.103 ("If in any workweek an employee is covered by the Act and is not exempt from its overtime pay requirements, the employer must total all the hours worked by the employee for him in that workweek (even though two or more unrelated job assignments may have been performed), and pay overtime compensation for each hour worked in excess of the maximum hours applicable under section 7(a) of the Act.")

As the Seventh Circuit recognized in *Publishers Resource, supra*, this is not a wrongful discharge case. *See* 762 F.2d at 560. Defendants' obligation to pay Mr. Morrison's past overtime wages "would in no way be affected by the amount of income [Mr. Morrison] was able to produce from other sources." *See id.* Thus, Mr. Morrison "did not have any duty to mitigate . . . ." *See id. See also Iron Workers Local No. 25 Pension Fund v. Klassic Services, Inc.*, 913 F. Supp. 541, 546 (E.D. Mich. 1995) ("I fail to see how the duty to mitigate damages would apply in this case. Defendant has not alleged how the plaintiffs could have avoided the accumulation of damages.")

What Defendants may really be arguing is that Mr. Morrison somehow had an obligation to tell them that they were violating the FLSA before bringing this lawsuit (in which case, the defense would be redundant vis-a-vis their fourth affirmative defense, discussed below). If that is what Defendants' fifth defense is supposed to mean, then it is based upon a fundamental misunderstanding of whose obligation it is to comply with the Act. In *Claborn Buick, supra*, part of the court's reasoning for holding that the mitigation defense did not apply was because the effect of allowing it would have been "to impose an affirmative duty on the innocent party rather

Page 9 of 16

than the culpable one." *See* 292 S.E.2d at 509.

The same holds true here because it is not an employee's duty to determine whether his or her employer has violated, or is violating, the FLSA. Instead, "[t]he employer has an affirmative duty to ascertain and meet the FLSA's requirements . . . ." *Martin v. Indiana Mich. Power Co.*, 381 F.3d 574, 584 (6th Cir. 2004) (citation omitted). *See also Sack v. Miami Helicopter Service, Inc.*, 986 F. Supp. 1456, 1472 (S.D. Fla. 1997) (citing *Washington v. Miller*, 721 F.2d 797, 804 (11th Cir. 1983)) (stating that Eleventh Circuit recognizes employer's duty to investigate potential FLSA liability as part of its burden to prove good faith); *Donovan v. Carls Drug Co., Inc.*, 1982 U.S. Dist. LEXIS 16559, *21 (N.D.N.Y. 1982) (observing that, in FLSA case, "the duty is upon the employer to comply with these regulations and not merely upon employee demand.")

Thus, because, as a matter of law, Mr. Morrison's damages were fixed at the time that Defendants' violated the FLSA, i.e., at the end of each workweek in which Defendants failed to pay Mr. Morrison the required overtime, and because Mr. Morrison could not have done anything to mitigate the damages caused to him by each such violation, Defendants' "duty to mitigate" defense must be stricken without leave to amend.

**3.     Defendants' fourth defense, which states that this action and/or Mr. Morrison's damages are barred by his alleged failure to provide notice of any alleged unlawful pay practice, must be stricken for the same reasons that Defendants' waiver and duty to mitigate defenses must be stricken.**

In their fourth defense, Defendants allege that "[t]he action and/or damages claimed in this action are barred by Plaintiff's failure to provide notice of any alleged unlawful pay practice." This defense fails to provide reasonable notice to Mr. Morrison of the legal grounds upon which it is purported to rest. It is also fatally flawed for at least two reasons. First, as

discussed just above, while the employer has an affirmative duty to determine whether its pay practices are unlawful, and to ensure that it is complying with the FLSA, the employee has no such duty. *See Martin*, 381 F.2d at 584 (citation omitted); *Sack*, 986 F. Supp. at 1472 (citing *Washington*, 721 F.2d at 804); *Carls Drug Co.*, 1982 U.S. Dist. LEXIS 16559 at *21.

Second, Defendants' fourth defense appears to be nothing more than a waiver argument couched in different language, and the factual scenario alleged in the fourth defense does not fit within either of the two "narrow circumstances," discussed above, in which an employee can relinquish his FLSA rights in the Eleventh Circuit. *See Stalnaker*, 293 F. Supp. 2d at 1262-63 (citing *Lynn's Food Stores*, 679 F.2d at 1352-54). Therefore, Defendants' fourth defense is inconsistent with binding Eleventh Circuit precedent pertaining to how FLSA rights may be relinquished. *See generally Lynn's Food Stores*, 679 F.2d at 1352-54.

Thus, because Mr. Morrison had no duty to determine whether Defendants were violating the law, and because he could not relinquish his rights by virtue of any alleged failure on his part to notify Defendants that they were violating the law, Defendants' fourth defense must be stricken without leave to amend.

### 4.   Defendants' ninth defense is inconsistent with binding former Fifth Circuit precedent.

In their ninth defense, Defendants allege that "[a]ny amounts owed by Plaintiff to Defendants may be set off against any award to Plaintiff."

Defendants' set-off defense is specifically foreclosed by binding former Fifth Circuit precedent. *See Brennan v. Heard*, 491 F.2d 1 (5th Cir. 1974).[7] *Heard* squarely held that "[s]et-

---

[7] The Eleventh Circuit sitting en banc adopted as precedent the law of the Fifth Circuit as it existed on September 30, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981).

offs against back pay awards deprive the employee of the 'cash in hand' contemplated by the Act, and are therefore inappropriate in any proceeding brought to enforce the FLSA minimum wage and overtime provisions, whether the suit is initiated by individual employees or by the Secretary of Labor." 491 F.2d at 4.[8] Thus, Defendants' set-off defense is inconsistent with binding former Fifth Circuit precedent, so it should be stricken without leave to amend.

C.   CERTAIN OF DEFENDANTS' REMAINING DEFENSES EITHER FAIL TO ALLEGE ALL OF THE ESSENTIAL ELEMENTS THEREOF REQUIRED BY THE ELEVENTH CIRCUIT, OR ARE PLED IN MUCH TOO VAGUE A MANNER TO APPRISE MR. MORRISON, AND THE COURT, OF THE LEGAL BASES AND GROUNDS UPON WHICH THEY PURPORT TO BE PREMISED.

1.   **Defendants' eighth defense fails to allege the legal elements which the Eleventh Circuit has held must be pled in order to sustain a defense to liquidated damages, and it affirmatively alleges lack of willfulness, which is not part of a defense to liquidated damages.**

Defendants' eighth defense alleges that "Plaintiff is not entitled to liquidated damages because Defendants did not willfully or otherwise violate the law; and, if any violation is established, Defendants had a good faith belief that they were in compliance with the law."

First, "the violation of the FLSA does not have to be intentional for [the employee] to recover liquidated damages . . . ." *Martin v. Indiana Mich. Power Co.*, 381 F.3d 574, 584 (6th

---

[8] The following discussion by the former Fifth Circuit in *Heard* is also instructive here:

The federal courts were not designated by the FLSA to be either collection agents or arbitrators for an employee's creditors. Their sole function and duty under the Act is to assure to the employees of a covered company a minimum level of wages. Arguments and disputations over claims against those wages are foreign to the genesis, history, interpretation, and philosophy of the Act. The only economic feud contemplated by the FLSA involves the employer's obedience to minimum wage and overtime standards. . . .

491 F.2d at 4 (emphases added).

Cir. 2004). Thus, Defendants' allegation that they are not subject to liquidated damages because they purportedly did not "willfully" violate the FLSA should be stricken without leave to amend. *See generally id.*

Second, Defendants have not alleged all of the legal elements which the Eleventh Circuit has held must be alleged for a liquidated damages defense under the FLSA:

> The Eleventh Circuit has opined that in order to avoid liquidated damages under the FLSA, the 'employer must <u>plead and prove</u> that the act or omission complained of was: (1) in good faith; (2) in conformity with; and (3) in reliance on an administrative regulation, order, ruling, approval or interpretation of an agency of the United States.' *Olson v. Superior Pontiac-GMC, Inc.*, 765 F.2d 1570, 1579, modified, 776 F.2d 265 (11th Cir. 1985). The test of whether or not an employer acted in good faith also has been interpreted to include the objective standard of whether the employer acted as a reasonably prudent person would have acted under similar circumstances. 765 F.2d 1570 at 1580 (internal citation omitted).

*Sack v. Miami Helicopter Serv.*, 986 F. Supp. 1456, 1472 (S.D. Fla. 1997) (emphasis added).

Recently, in *Mallia v. Applied Card Systems, Inc.*, No. 04-80773-CIV-COHN, (S.D. Fla. January 4, 2005) (order granting in part motion to strike), *supra*, the Southern District of Florida again acknowledged that, in the Eleventh Circuit, the employer must plead and prove all of the foregoing three elements. *See id.* at 3-4 (citations omitted). In that case, the defendant alleged more than Defendants have alleged here. Specifically, in *Mallia*, the defendant alleged "that if there was any violation of the FLSA, such action 'was not wilful, but rather was in good faith, and based upon a reasonable belief that such action was not a violation' of the FLSA." *See id.* at 3. Nevertheless, the court recognized that the defense was "missing the elements of taking action based in conformity with and in reliance upon agency action." *see id.* at 4, and ordered the defense stricken, with leave to amend. *See id.*

In this case, Defendants have not only failed to allege "the elements of taking action based in conformity with and in reliance upon agency action[,]" *see id.*, but they have further failed to allege that they objectively "acted as a reasonably prudent person would have acted under similar circumstances." *See Sack*, 986 F. Supp. at 1472 (citing *Olson*, 765 F.2d at 1580). Thus, Defendants' eighth defense should be stricken with leave to amend to allege these required elements if they can do so within the strictures of Rule 11. That way, Defendants can, if appropriate, attempt to satisfy the pleading requirements established by the Eleventh Circuit in *Olson, supra*, for a defense seeking to avoid the imposition of liquidated damages. *See* 765 F.2d at 1579.

### 2.     Defendants' seventh defense is far too vague to even alert Mr. Morrison of the legal basis, if any, for that defense.

Defendants' seventh defense states: "The damages Plaintiff may recover in this action are restricted by the statutes and acts which form the basis for the cause of action." In *Mallia, supra*, the Southern District of Florida held that an almost identical defense should be stricken because it was too vague: "[U]pon review of the fifth defense, this defense, which specifically relates to Plaintiff's damages, is too vague. By simply stating that Plaintiff's damages 'are limited by the provisions' of the FLSA, [the defendant] has not put Plaintiff on notice as to what provision of the FLSA limits the damages." *See Mallia*, No. 04-80773-CIV-COHN, at 3. Defendants' seventh defense should be stricken with leave to amend for the same reason. *See generally id.*[9]

---

[9] To the extent that the seventh defense refers to the same matter raised in the eighth, i.e., the liquidated damages issue, it is redundant. *See* Fed. R. Civ. P. 12(f) (permitting redundant matters to be stricken).

Page 14 of 16

**3.    Defendants' second defense is also too vague to alert Mr. Morrison of what Defendants are alleging.**

In their second defense, Defendants allege: "Plaintiff and/or Defendants are not subject to and/or are exempt under applicable statutes. Defendant was not a covered entity under the FLSA. Plaintiff does not have individual coverage under the FLSA. Defendants was not an employer and Plaintiff was not an employee as defined by the FLSA."[10]

To the extent that Defendants are attempting to allege that Mr. Morrison was exempt from the FLSA's overtime requirements, they should, at a minimum, be required to list all such exemptions. Just stating that Mr. Morrison was exempt is not enough. *See Mallia*, No. 04-80773-CIV-COHN, at 6 ("Under a notice pleading standard [the defendant] need not specify the facts that support each exemption it is asserting. However, [the defendant] should list the exemptions that are at issue . . . .") In the same vein, if Defendants are alleging that <u>they</u> are somehow exempt from the FLSA, they should list any such exemptions that they contend are at issue. *See generally id.*

Thus, Defendants' second defense should be stricken, with leave to amend, so that Defendants may provide Mr. Morrison, and the Court, with notice of which exemption(s), if any, Defendants intend to rely upon in this case. *See id.* Also, if it pleases the Court, the separate legal theories embodied in the second defense might be pled in separate defenses.

<u>CONCLUSION</u>

Plaintiff, Devon Morrison, respectfully requests that this Honorable Court grant his

---

[10] The second defense appears to include <u>at least</u> three different legal issues, i.e., the issue of any applicable statutory exemptions, the issues of enterprise and individual coverage, and the issues of employer/employee status. Mr. Morrison submits that the better practice would be to allege each distinct legal theory in a different affirmative defense.

Motion to Strike.  Specifically, he requests that Defendants' fourth, fifth, sixth and ninth defenses be stricken without leave to amend because they fail to state a claim upon which relief can be granted.  He also requests that Defendants be required to amend their answer with respect to their second, third and seventh defenses to allege them in a manner that satisfies the minimum pleading requirements of Rules 8 and 9, if they can do so and still comply with their obligations under Rule 11.

This 7th day of March, 2005.

LAW OFFICE OF WILLIAM N. HERSHMAN, P.A.
ATTORNEY FOR PLAINTIFF
By: WILLIAM N. HERSHMAN
1001 NORTH FEDERAL HIGHWAY, SUITE 301
HALLANDALE, FLORIDA 33009
TEL: (954) 458-1345
FAX: (954) 458-1324
EMAIL: WILLIAMHERSHMAN@AOL.COM
FLORIDA BAR NUMBER:  617962

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Plaintiff's Motion to Strike Certain of Defendants' Defenses, and Incorporated Memorandum of Law, has been served upon counsel for all parties, specifically those listed immediately below, by depositing same in the United States Mail, properly addressed and first class postage prepaid, on this 7th day of March, 2005:

Todd W. Shulby, Esq.
Todd W. Shulby, P.A.
12555 Orange Drive, Suite 270
Davie, Florida 33330-4304

WILLIAM N. HERSHMAN

Morrison.MotStrike&Memo.030705

Page 16 of 16

EXHIBIT "A"

LAW OFFICE OF WILLIAM N. HERSHMAN, P.A.
HOLLYWOOD EXECUTIVE CENTER
1001 NORTH FEDERAL HIGHWAY, SUITE 301
HALLANDALE, FLORIDA 33009
TELEPHONE: (954) 458-1345
FACSIMILE: (954) 458-1324
E-MAIL: WILLIAMHERSHMAN@AOL.COM

February 28, 2005

*Via U.S. Mail & Facsimile*

Todd W. Shulby, Esq.
Todd W. Shulby, P.A.
12555 Orange Drive
Suite 270
Davie, Florida 33330

Re:   *Devon Morrison v. Executive Aircraft Refinishing, Inc. and Mark
Turi*, Case No. 04-81079-CIV-RYSKAMP-VITUNAC

Dear Todd:

This letter is in furtherance of my duty to confer pursuant to Local Rule 7(1)(A)(3) before filing a Rule 12(f) motion to strike certain of your clients' affirmative defenses. Specifically, "affirmative defenses are pleadings, and therefore, are subject to all pleading requirements of the Federal Rules of Civil Procedure." *Heller Financial, Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1294 (7ᵗʰ Cir. 1989). *See also Lafayette Corp., Ltd. v. Bank of Boston International South*, 723 F. Supp. 1461, 1466-67 (S.D. Fla. 1989). Motions to strike are desirable where, as here, they "remove unnecessary clutter from the case," and thus serve to expedite the proceedings. *See Heller*, 883 F.2d at 1294. *See also Lafayette Corp.*, 723 F. Supp. at 1466 (quoting *Anchor Hocking Corp. v. Jacksonville Elec. Auth.*, 419 F. Supp. 992, 1000 (M.D. Fla. 1976)) (insufficient defenses should be stricken "in order to avoid unnecessary time and money in litigating invalid and spurious issues.") Several of your clients' purported defenses are insufficiently pled and/or fail to state a claim.

1.   Second Defense.

Your clients' second defense is too vague to provide notice to Mr. Morrison of what they are attempting to allege, and it also appears to be a combination of more than one purported defense. For example, the issue of whether Mr. Morrison was exempt is legally distinct from the issue of whether he or the Defendants were subject to individual or enterprise coverage under the

Page 1 of 5

FLSA, which, in turn, is legally distinct from whether Mr. Morrison was an employee or independent contractor. If your clients intended to allege all three of these things, they should be pled in three different affirmative defenses, and, at a minimum, the legal elements of each defense should be pled.

Also, if your clients are attempting, in their second defense, to allege a statutory exemption, it should be clearly identified. Not only do your clients have the burden of proof vis-a-vis any such exemptions, *see Wouters v. Martin County, Fla.*, 9 F.3d 924, 929 (11th Cir. 1993), but such exemptions are also narrowly construed, and only apply to "those plainly and unmistakably within [their] terms and spirit . . . ." *See A.H. Phillips, Inc. v. Walling*, 324 U.S. 490, 493 (1945) ("Any exemption from such humanitarian and remedial legislation must therefore be narrowly construed . . . . To extend an exemption to other than those plainly and unmistakably within its terms and spirit is to . . . frustrate the announced will of the people.") In a recent decision, which I am enclosing with this letter, the Southern District of Florida held that all exemptions upon which a defendant intends to rely must be specifically identified. *See Mallia v. Applied Card Systems, Inc.*, Case No. 04-80773, p. 6 (S.D. Fla. January 1, 2005).

2.      Fourth Defense.

Your clients' fourth defense does not provide Mr. Morrison with fair notice of the legal basis or bases, if any, for that defense. If that defense is premised upon the waiver and estoppel theories embodied in your client's sixth defense, it is unsustainable (for the reasons discussed, below, vis-a-vis that defense). If not, your clients should clarify the legal basis or bases, if any, that they allege support that defense.

3.      Fifth Defense.

There is no duty to mitigate damages in FLSA overtime cases. An employer violates the FLSA when, *inter alia*, it does not pay its employees one and one-half times their regular rates of pay for their work in excess of 40 hours in any workweek. Once an employer has violated its legal obligation in any workweek, there is nothing that an employee could possibly do to mitigate his or her damages with respect to that past violation. Thus, the only thing that your clients could possibly be alleging in their fifth defense is that Mr. Morrison was somehow responsible for ascertaining your clients' legal obligations to pay overtime. Any such construction of the Act would impermissibly shift to an employee the employer's legal duty to ascertain the requirements of, and to comply with, the FLSA. Your clients' duty to mitigate defense may also be a waiver argument in disguise. If so, it is unsustainable for the same reasons discussed, below, vis-a-vis your clients' sixth defense.

4.      Sixth Defense.

Your clients' sixth defense, to the extent that it alleges waiver, estoppel, release and agreement, is insufficient as a matter of law. "Because the FLSA was enacted to protect workers

from the poor wages and long hours that can result from great inequalities in bargaining power between employers and employees, the FLSA's provisions are mandatory and, except in two narrow circumstances, are generally not subject to bargaining, waiver, or modification by contract or settlement." *Stalnaker v. Novar Corp.*, 293 F. Supp. 2d 1260, 1262 (M.D. Ala. 2003) (citing *Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697, 706 (1945)). *See also Lynn's Food Store, Inc. v. United States*, 679 F.2d 1350, 1352 (11ᵗʰ Cir. 1982) (quoting *Barrentine v. Arkansas-Best Freight System*, 101 S. Ct. 1437, 1445 (1981)); *Durkin v. M.E. Waldron*, 130 F. Supp. 501, 508-09 (W.D. La. 1955) (citations omitted) (rejecting defendants' estoppel defense because FLSA rights cannot be waived or released). These "two narrow circumstances" are payments in full of back wages supervised by the Secretary of Labor and accepted by the employee, *see Stalnaker*, 293 F. Supp. 2d at 1262 (citing 29 U.S.C. § 216(c); *Lynn's Food Stores*, 679 F.2d at 1352-53), and settlements of individual FLSA actions reviewed and approved by the court. *See id.* at 1262-63 (citing *Lynn's Food Stores*, 679 F.2d at 1354). I do not believe that your clients can allege in good faith that either of the two aforementioned "narrow circumstances" applies to Mr. Morrison's FLSA claims here.

Moreover, the doctrine of laches is not an appropriate affirmative defense to a FLSA lawsuit. *Fleming v. Carpenters/Contractors Cooperation Committee, Inc.*, 834 F. Supp. 323, 328 (S.D. Cal. 1993) (striking a laches defense to a FLSA lawsuit pursuant to Rule 12(f) and imposing Rule 11 sanctions against a defendant for resisting a motion to strike on that basis). *See also United States v. Mack*, 295 U.S. 480, 489 (1935) ("Laches within the term of the statute of limitations is no defense at law."); *Mallia*, Case No. 04-80773, pp. 4-6 (attached hereto) (where Southern District of Florida held that equitable defense could not be pled in response to claim for money damages in FLSA overtime case). In other words, there is no factual or legal support for your clients' sixth defense. *See* Fed. R. Civ. P. 11(b). Thus, this letter is in furtherance of my duty to confer before filing a motion to strike and/or a Rule 11 motion with respect to those allegations in that defense.

5.  Seventh Defense.

Your clients' seventh defense is too vague. In the *Mallia* case, which, again, I have enclosed, the Southern District of Florida recently held that a nearly identical defense, which failed to specify which provision(s) of the FLSA purportedly limited the plaintiff's damages, should be stricken from the defendants' answer. *See Mallia*, Case No. 04-80773, p. 3.

6.  Eighth Defense.

Your clients' eighth defense does not adequately allege the elements necessary in the Eleventh Circuit to avoid liquidated damages. In particular, in the Eleventh Circuit, in order to avoid the imposition of liquidated damages, an "employer must plead and prove that the act or omission complained of was: (1) in good faith; (2) in conformity with; and (3) in reliance on an administrative regulation, order, ruling, approval or interpretation of an agency of the United States." *Olson v. Superior Pontiac-GMC, Inc.*, 765 F.2d 1570, 1579, *modified*, 776 F.2d 265

Page 3 of 5

(11th Cir. 1985) (citations omitted) (emphasis added). In the *Mallia* decision, the Southern District of Florida ordered a defense, which failed to allege all of these required elements, stricken from the defendants' answer. *See Mallia*, Case No. 04-80773, pp. 3-4. Your clients have not even alleged the second and third elements of the defense. Also, wilfulness, which your clients pled, is not the relevant standard for determining whether liquidated damages are to be awarded.

7.    Ninth Defense.

Your clients' ninth defense is also legally insufficient under Rule 12(b)(6). Specifically, the set-off argument which your clients are attempting to raise is specifically foreclosed by binding former Fifth Circuit precedent. *See Brennan v. Heard*, 491 F.2d 1 (5th Cir. 1974).[1] *Heard* squarely held that "[s]et-offs against back pay awards deprive the employee of the 'cash in hand' contemplated by the Act, and are therefore inappropriate in any proceeding brought to enforce the FLSA minimum wage and overtime provisions, whether the suit is initiated by individual employees or by the Secretary of Labor." 491 F.2d at 4. *See also Marshall v. Wallace Oil Co.*, 1980 U.S. Dist. LEXIS 14549, *6 (N.D. Ga. 1980) ("This Court concludes that, in this circuit, neither set-off nor recoupment is permitted in an action for unpaid back wages under the FLSA. Plaintiff's motion to strike defendants' counterclaim is Granted.")

> The federal courts were not designated by the FLSA to be either collection agents or arbitrators for an employee's creditors. Their sole function and duty under the Act is to assure to the employees of a covered company a minimum level of wages. Arguments and disputations over claims against those wages are foreign to the genesis, history, interpretation, and philosophy of the Act. The only economic feud contemplated by the FLSA involves the employer's obedience to minimum wage and overtime standards. . . .

*Heard*, 491 F.2d at 4 (emphases added).

The Department of Labor ("DOL") regulations likewise recognize that payments by an employer to an employee which were not made as compensation for the employee's hours worked in any workweek cannot be credited toward overtime compensation due under the FLSA. *See* 29 C.F.R. § 778.216. *See also* 29 C.F.R. § 778.218(a); 29 C.F.R. § 778.320(b). These regulations are controlling as long as they are based upon a permissible construction of the FLSA. *See Falken v. Glynn County*, 197 F.3d 1341, 1346 (11th Cir. 1999) (quoting *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842-43 (1984)).

Please inform me whether your clients will amend their answer to cure some or all of the deficiencies discussed above. That way, I will be able to decide whether it will still be necessary

---

[1] The Eleventh Circuit sitting en banc adopted as precedent the law of the Fifth Circuit as it existed on September 30, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981).

for my client to file a motion to strike and, if so, I can narrow the issues to be addressed in that motion with respect to any amendments that your clients agree to make. It is important that I hear from you as soon as possible so that I will have sufficient time to prepare my client's motion to strike in advance of its filing deadline. I believe that the deadline is early next week, so, if I do not hear from you by Wednesday, March 2, 2005, I plan to begin drafting the motion to strike.

My client reserves all rights. Thank you very much.

Best Regards,

William N. Hershman

Enc.

cc:   Devon Morrison

Morrison.DefCounselLtr.022805

**Page 5 of 5**

EXHIBIT "B"

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 04-80773-CIV-COHN

VINCENT M. MALLIA,

     Plaintiff,

vs.

APPLIED CARD SYSTEMS, INC. and
ROCCO A. ABESSINIO,

     Defendants.

_____/



FILED by _____ D.C.

JAN 0 4 2005

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. FT. LAUD

### ORDER GRANTING IN PART MOTION TO STRIKE DEFENSES
### ORDER GRANTING IN PART MOTION FOR CONTINUANCE
### ORDER GRANTING MOTION TO EXCEED PAGE LIMITATION

THIS CAUSE is before the Court upon Plaintiff's Motion to Strike Defendant

Applied Card System's Defenses and Affirmative Defenses [DE 8], Plaintiff's Motion for

Continuance of Trial [DE 10], and Plaintiff's Motion to Exceed Page Limitation [DE 16].

The Court has carefully considered the motions and is otherwise fully advised in the

premises.

### I. BACKGROUND

Vincent Mallia ("Plaintiff" or "Mallia") filed this action against his former employer,

Applied Card Systems, Inc. ("ACS"), and its Chairman, Rocco Abessinio, for failure to

pay minimum wages and failure to pay overtime compensation in violations of the Fair

Labor Standards Act ("FLSA"). Defendants filed Answers to the Complaint, including

affirmative defenses. Plaintiff moved to strike certain affirmative defenses asserted by

ACS.[1] Plaintiff seeks to strike certain defenses with prejudice, as inappropriate

_____

[1] The Court notes that Defendant Abessinio's Answer and Affirmative Defenses
was not filed until December 20, 2004. Therefore, Abessinio's affirmative defenses are



defenses to an FLSA action, while other defenses are sought to be struck without

prejudice, with leave to amend.   In its opposition to the motion, ACS has withdrawn its

Second and Eighth Affirmative Defendant.

## II.  DISCUSSION

Pursuant to Rule 12(f) of the Federal Rules of Civil Procedure, "upon motion

made by a party ... the court may order stricken from any pleading any insufficient

defense."  Though disfavored in federal practice, a motion to strike may be granted with

regard to a defense, or parts of a defense, that can have no possible bearing upon the

subject matter of the litigation.  Craig Funeral Home, Inc. v. State Farm Mutual

Automobile Ins. Co., 254 F.2d 569, 572 (5th Cir. 1958).[2]

### A.  First/Third/Fifth/Seventh Affirmative Defenses

Plaintiff argues that several of ACS's affirmative defenses are too vague and

must be stricken with leave to amend.  These three defenses appear to be in the nature

of general statements of denial.  For example, the first defense merely states that

Plaintiff has failed to allege "sufficient ultimate facts" in support of his claims.  See

Defendant Applied Card Systems' Answer, Defenses and Affirmative Defenses

at 8 [DE 6]. The third defense states that Plaintiff's claims are barred by the "applicable

---

not the subject of Plaintiff's motion, which became ripe on December 8, 2004.
However, the Court notes that the Court's rulings regarding the sufficiency of ACS's
pleading would also apply to Defendant Abessinio's pleading.

[2] The decisions of the United States Court of Appeals for the Fifth Circuit, as that
court existed on September 30, 1981, handed down by that court prior to the close of
business on that date, shall be binding as precedent in the Eleventh Circuit, for this
court, the district courts, and the bankruptcy courts in the circuit.  Bonner v. Pritchard,
661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

statute of limitations," while the seventh defense states that Plaintiff "has not alleged sufficient facts to justify any collective action." Id. at 9.  The Court concludes that under the notice pleading standard of Rule 8 of the Federal Rules of Civil Procedure, these three defenses should not be stricken.  Though not specific, these defenses still put Plaintiff on notice that ACS will assert that Plaintiff has not proved his claim, that all or part of any claim is barred by the statute of limitations, and that Defendant may oppose an attempt to make this case a collective action.  Therefore, the motion to strike is denied as to these three defenses.

However, upon review of the fifth defense, this defense, which specifically relates to Plaintiff's damages, is too vague.  By simply stating that Plaintiff's damages "are limited by the provisions" of the FLSA, ACS has not put Plaintiff on notice as to what provision of the FLSA limits the damages.  As argued in its opposition to the motion, ACS may be arguing that only back pay, overtime pay, liquidated damages and attorney's fees are allowable, rather than Plaintiff's allegedly more expansive damage demand.  See Complaint, ¶ 56.  However, if this is the case, such defense should be rephrased to provide sufficient notice to Plaintiff regarding this assertion.[3]

## B.  Good Faith Defense to Wilfulness

ACS's fourth defense asserts that if there was any violation of the FLSA, such action "was not willful or reckless, but rather was in good faith, and based upon a reasonable belief that such action was not a violation" of the FLSA.  See Defendant Applied Card Systems' Answer, Defenses and Affirmative Defenses at 9 [DE 6]. Plaintiff

---

[3] See discussion *infra* regarding equitable claims.

argues, correctly, that in the Eleventh Circuit "[t]he employer must plead and prove that the act or omission complained of was: (1) in good faith; (2) in conformity with; and (3) in reliance on an administrative regulation, order, ruling, approval or interpretation of an agency of the United States." Olson v. Superior Pontiac-GMC, Inc., 765 F.2d 1570, 1579, modified on other grounds, 776 F.2d 265 (11th Cir. 1985) (citing Portal to Portal Pay Act, 29 U.S.C. §§ 258, 260).[4]  ACS's fourth affirmative defense appears to be missing the elements of taking action based in conformity with and in reliance upon agency action.  Therefore, the Court will grant the motion to strike the fourth defense, with leave to amend.

### C. Equitable Relief/Unclean Hands Defense

ACS's sixth affirmative defense asserts that "Plaintiff's damages     are barred in whole or in part by the equitable doctrine of unclean hands."  See Defendant Applied Card Systems' Answer, Defenses and Affirmative Defenses at 9 [DE 6].  Plaintiff argues that since equitable relief is not available under the FLSA, equitable defenses such as unclean hands should not be available either.[5]  Defendant argues that because Plaintiff seeks a declaratory judgment in its "Prayer" for relief, a form of equitable relief, an equitable defense may be raised.  See Complaint, ¶ 56.

In Bailey v. Gulf Coast Transp., Inc., 280 F.3d 1333, 1335 (11th Cir. 2002), the Eleventh Circuit stated that for violations of wage and overtime provisions, the FLSA

---

[4]  ACS bases its opposition to the motion to strike this defense upon case law from other Circuits.

[5]  The Court notes that Plaintiff relies in part on unpublished opinions which are not attached to Plaintiff's motion and are not in the record.  The Court does not rely on those decisions in reaching its conclusions on this issue.

4

"does not list equitable relief as an available remedy in an employee suit."[6]
However, Defendant's Sixth Affirmative Defense specifically asserts that Plaintiff's
damages are limited by the "equitable doctrine of unclean hands."  To assert an
unclean hands defense, a defendant "must satisfy two requirements.  First, the
defendant must demonstrate that the plaintiff's wrongdoing is directly related to the
claim against which it is asserted.  Second, even if directly related, the plaintiff's
wrongdoing does not bar relief unless the defendant can show that it was personally
injured by her conduct."  Calloway v. Partners Nat. Health Plans, 986 F.2d 446,450-451
(11ᵗʰ Cir. 1993) (internal citations omitted).

In this case, Defendant cannot show that any alleged wrongdoing by Plaintiff is
directly related to limit an FLSA damages claim for minimum wage and overtime
compensation since the statute and case law preclude equitable relief in addition to the
unpaid wages.[7]  Therefore, ACS's sixth affirmative defense is hereby stricken because
it attempts to assert an equitable defense to a damage claim.  This decision, is without
prejudice to ACS asserting an equitable defense to an equitable claim of Plaintiff, if

---

[6] Bailey also held that for violations of its antiretaliation provisions, the FLSA **did**
allow a private right of action to obtain legal or equitable relief including without
limitation employment, reinstatement, promotion, and the payment of wages lost and an
additional equal amount as liquidated damages.  280 F.3d at 1336 (quoting 29 U.S.C.
§ 216(b)).

[7] This issue is related to the set-off issue, discussed below, in that an employer
cannot "clutter these proceedings with the minutiae of other employer-employee
relationships."  Brennan v. Heard, 491 F.2d 1, 4 (5ᵗʰ Cir. 1974).  While not to trivialize
the allegations brought by Defendant in its Response to Plaintiff's Motion, such
allegations are not relevant to defense of FLSA wage and overtime claims.  They may
be relevant to a wrongful termination or retaliation claim, but such claims are not
present in this case (and should not be raised by any future opt-in, similarly situated
plaintiff).

Plaintiff has alleged an equitable claim.

### D.  FLSA Exemptions

In its ninth affirmative defense, ACS alleges that Plaintiff was "exempt from the overtime pay requirements under the Fair Labor Standards Act under the administrative and executive exemptions and/or other white collar exemptions." See Defendant Applied Card Systems' Answer, Defenses and Affirmative Defenses at 9 [DE 6]. Plaintiff asserts that this defense does not provide sufficient notice as to which exemptions are at issue in this case. Plaintiff further seeks the Court to require ACS to plead the legal elements of each exemption and the facts that support such exemption. In its opposition to the motion to strike, ACS argues that because Plaintiff is seeking to add employees from "at least three different job categories." the broad language is appropriate.

The Court agrees in part with Plaintiff. Under a notice pleading standard ACS need not specify the facts that support each exemption it is asserting. However, ACS should list the exemptions that are at issue without simply stating "and/or other white collar exemptions." Therefore, the ninth affirmative defense is stricken, with leave to amend.

### E.  Set-off

In its tenth affirmative defense, ACS states that "it is entitled to a set-off for all compensation and benefits Plaintiff would not otherwise have received if he was classified as a non-exempt associate." Plaintiff moves to strike this defense with prejudice, relying upon Brennan v. Heard, 491 F.2d 1, 4 (5th Cir. 1974). In Brennan, the former Fifth Circuit held that "arguments and disputations over claims against those

6

[overtime/minimum] wages are foreign to the genesis, history, interpretation, and philosophy of the Act." Thus, in general, an employer is not entitled to any set-off from minimum wage or overtime pay awards. ACS argues that recent Fifth Circuit decisions limit Brennan to situations where the wages paid after the setoff fall below the minimum standard. See Singer v. City of Waco, 324 F.3d 813, 828 n.9 (5th Cir. 2003). This Court notes that while Brennan is binding upon this court, Singer is not.[8]  Singer involved a situation where offsets were permitted to firefighters routinely working overtime who received pre-payments of overtime wages as decided by the district court. ACS's theory in this case is that if Plaintiff is correct in his assertion that he was mis-categorized as a non-exempt employee, upon recharacterization as an exempt employee, certain prior benefits paid to Plaintiff based upon his being non-exempt could be offset against an overtime wages damage award.

This Court concludes that this issue cannot be decided at the pleading stage, but must rather await discovery and further briefing on this defense. Therefore, the motion to strike this defense is denied. However, as such a defense would appear to arise in nearly every FLSA mis-categorization case, Defendants would need more relevant decisions than Singer to overcome the general rule laid down by Brennan.

## III. CONCLUSION

Finally, with respect to the eleventh defense, which simply states that "ACS reserves the right to add additional defenses and affirmative defenses as this case proceeds," the Court denies the motion to strike, but notes that such a defense is

---

[8] See Bonner v. Pritchard, 661 F.2d at 1207, note 2 supra.

7

subject to the Court's scheduling order.

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1.  Plaintiff's Motion to Strike Defendant Applied Card System's Defenses and Affirmative Defenses [DE 8] is hereby **GRANTED in part** as to defenses two, four, five, six, eight, and nine, and **DENIED** as to the other defenses.

2.  Defendant shall file an Amended Answer by January 17, 2004 that complies with this Order. Such Amended Answer shall include all defenses, including those not stricken by this Order. Only the Amended Answer shall be used from this point forward in this litigation;

3.  Plaintiff's Motion to Exceed Page Limitation [DE 16] is hereby **GRANTED** as no timely opposition to the motion was filed;

4.  Plaintiff's Motion for Continuance of Trial [DE 10] is hereby **GRANTED** in part as follows: The deadline for joinder of parties, including the filing of a motion to allow notice to potential claimants, shall be March 1, 2005; the fact and expert discovery cutoff date shall be June 30, 2005; the mediation deadline shall be July 14, 2005; the summary judgment motion and motions to exclude/exclude expert testimony shall be due by July 14, 2005; the joint pretrial stipulation, motions in limine, and the designations of deposition excerpts for use of trial shall be September 1, 2005; responses to motions in limine shall be due by September 12, 2005, while objections to deposition designations shall also be due by September 12, 2005.

5.  The Calendar Call for this case is hereby reset for Thursday, September 15, 2005 at 1:30pm;

8

6.     The trial in this case shall be held during the two-week trial period commencing

September 19, 2005.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County,

Florida, this _____ day of January, 2005.

JAMES I. COHN
United States District Judge

copies to:

William Hershman, Esq.                    (Via fax to 954-458-1324)
Beth Joseph, Esq./Mark Zelek, Esq.        (Via fax to 877-432-9652)

9

EXHIBIT "C"

LEXSEE 1987 USDIST LEXIS 5992

**Stuart Blenner, Plaintiff, v. Major Indoor Soccer League, Inc., a Delaware corporation, and William Kentling, Defendants**

No. 86 C 6676

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

*1987 U.S. Dist. LEXIS 5992*

**June 30, 1987, Decided; July 1, 1987, Filed**

**LexisNexis(R) Headnotes**

OPINIONBY: [*1]

HART

OPINION:

*MEMORANDUM OPINION AND ORDER*

HART, U.S.D.J.

Plaintiff Stuart Blenner brought this action seeking to recover money allegedly owed by defendant Major Indoor Soccer League ("MISL") under an employment contract. Presently before the court are cross–motions for summary judgment on Count I of the amended complaint. n1

> n1 Count II was previously dismissed by this court for failure to state a claim.

FACTS

Plaintiff left a position as an attorney with the United States Postal Service in order to assume the position of Deputy Commissioner for MISL. When he took the job, in October 1985, plaintiff entered into an employment contract with MISL which provided for a base salary of $65,000 plus various benefits. A section of the agreement captioned "Memorandum of Understanding" provided for a one year base salary commitment if plaintiff was involuntarily terminated, terminated due to constructive discharge, or voluntarily terminated because of inappropriate employment. However, that Section also provided that voluntary termination to begin employment with another organization would nullify MISL's commitment.

Plaintiff was terminated from his employment on May 6, 1986 and now [*2] seeks to recover the remainder of his annual base salary. Plaintiff contends that he was involuntarily terminated after having been paid only a por-

tion of his salary. Plaintiff was paid $41,750.00, leaving $23,250.00 allegedly due and owing. n2 MISL contends that plaintiff was not involuntarily terminated but rather, that he terminated his employment voluntarily in order to resume employment with the Postal Service. For this reason, MISL contends that it is not required to pay the remainder of plaintiff's annual salary. MISL also claims that, even assuming plaintiff was involuntarily terminated, he is not entitled to damages, since he was immediately reemployed by the Postal Service and suffered no damages.

> n2 Plaintiff represents that defendant paid him only $39,750.00, leaving $25,250.00 due and owing, but these figures do not appear to be accurate.

DISCUSSION

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Fed. R. Civ. P. 56(c)*. See Celotex [*3] *Corp. v. Catrett, 106 S.Ct. 2548 (1986); Anderson v. Liberty Lobby, Inc., 106 S.Ct. 2505 (1986)*. In ruling on a motion for summary judgment, the record and any reasonable inferences drawn from it must be viewed in the light most favorable to the party opposing the motion. Bonds v. Coca–Cola *Co., 806 F.2d 1324, 1331 (7th Cir. 1986)*. The court must also accept as true all the evidence of the nonmovant. Id. However, *Fed. R. Civ. P. 56(c)* requires that an adverse party set forth specific facts showing a genuine issue for trial. *Posey v. Skyline, 702 F.2d 102, 105 (7th Cir.)*, cert. denied, *464 U.S. 960 (1983)*.

In this case, plaintiff's motion for summary judgment on his claim for the remainder of his annual base salary pursuant to the terms of his contract with defendant must

1987 U.S. Dist. LEXIS 5992, *3

be granted, and defendants' cross-motion for summary judgment must be denied. The undisputed facts in the record show that plaintiff was, in fact, involuntarily terminated, and did not voluntarily leave his employment in order to resume his employment with the Postal Service. MISL, in its answers to interrogatories propounded by plaintiff, squarely admitted that:

Plaintiff was terminated [*4] for reasons of cause among which were:

1. Refusal to accept the responsibilities and carry out the duties of Deputy Commissioner.

2. Plaintiff was a demoralizing influence upon league personnel.

3. Plaintiff failed and/or refused to gain sufficient knowledge of the operation of a national professional sports league: to assume leadership responsibility, to communicate with league officials and member clubs, and follow instructions.

Nowhere in the answers to interrogatories did MISL contend that plaintiff voluntarily resigned in order to take other employment. The deposition testimony of defendant Kentling, MISL's acting commissioner, similarly shows that plaintiff's termination was involuntary:

My recollection as to the reason Commissioner Dale terminated Mr. Blenner was that he had not performed in his budgetary responsibilities . . . in terms of disclosure to the members about the reality of the budget. There had been frustration on the Part of the members regarding his management of the public relations side of the office.

There had been concern among the directors that when attendance in the early season was not up to expectations and a meeting was sought among general [*5] managers to talk about mutual problems, the timing of this meeting was delayed which was later found out by directors to be that Mr. Dale had planned a four week trip to the Far East. Mr. Blenner had chosen not to disclose this as part of the reason for the delay in the attendance meeting, that he had not managed Mr. Gualtier and the responsibilities of selling sufficient advertising time to cover the costs.

Kentling's deposition testimony further indicates that the decision to terminate plaintiff was in fact made several weeks before plaintiff was actually asked to leave — in March or April of 1986.

MISL contends that plaintiff retained counsel more than one month before he was terminated, in March 1986, to negotiate with MISL for a "buy-out" of his employment

agreement and then contacted the Postal Service to secure a commitment to reemploy him. MISL admits, however, that it had already become "disenchanted" with plaintiff's performance by this time, and the Kentling deposition indicates that plaintiff was, in fact, advised to seek other employment. While there is thus some evidence that plaintiff had himself become disillusioned with his job situation and begun to explore other [*6] options before he was terminated, and in fact began working for the Postal Service just four days after his termination, the undisputed fact remains that he was, in the end, terminated involuntarily. MISL's belated attempts to characterize plaintiff's departure as a "constructive voluntary termination," placing him within the commitment exclusion, are specifically contradicted by its answers to interrogatories and deposition testimony and are, in any event, unavailing. Even assuming that it could reasonably be inferred that plaintiff left his job voluntarily because of "inappropriate employment" or through a constructive discharge, under the agreement MISL was committed to pay his annual base salary. Only a "voluntary termination to begin employment with another organization" would suffice to nullify the commitment.

MISL also points out that plaintiff earned more money at the Postal Service after his departure than he would have earned had he continued to work for MISL. MISL argues that the proper measure of damages when an employee has been "wrongfully discharged" is the agreed wages during the contract term, reduced by wages earned during the same period and which could not have [*7] been earned in the same employment, citing *Feldstein v. Guinan, 140 Ill.App.3d 610, 499 N.E.2d 535 (1986).* However, this is not a wrongful discharge case, making the rule of Feldstein inapplicable. Plaintiff's contract with MISL did not specify that plaintiff's employment was to be for a particular duration, and under the terms of the contract, MISL was free to discharge plaintiff at any time and for any reason. The conduct about which plaintiff complains in this case is not, therefore, MISL's decision to discharge plaintiff, but rather, its refusal to honor its salary commitment in accordance with the contract. Plaintiff's right to his annual salary vested at the time he commenced his employment with MISL. Under *Publishers Resource, Inc. v. Walker-Davis Publications, Inc., 762 F.2d 557 (7th Cir. 1985),* applying Illinois law, the doctrine of mitigation of damages and setoff is inapplicable where damages are fixed at the time of the breach:

This is not a situation in which plaintiff's claim is for lost earnings, as in a wrongful discharge case. In such a case, plaintiff generally may not sit back and let damages mount, but has a duty to mitigate damages by making

1987 U.S. Dist. LEXIS 5992, *8

[*8] an effort to secure replacement employment. Here, on the other hand, plaintiff simply claims the amount . . . owed to it under a contract; [defendant's] obligation to pay these commissions would in no way be affected by the amount of income [plaintiff] was able to produce from other sources.

*Id.* at 360. See also *Stein v. Maiden Mills, inc., 9 Ill.App.3d 266, 292 N.E.2d 52 (1972).* Since plaintiff's damages were thus fixed and complete, and could neither mount nor be reduced following his termination, plaintiff is entitled to the remainder of his annual base salary, without setoff or deduction.

Plaintiff also claims that, under his contract with MISL, he is still entitled to four weeks paid vacation, insurance benefits, payment for a physical examination, and the use of a company car or a car allowance. However, the contract contains no provision requiring MISL to provide any of these benefits after termination of employment; the Memorandum of Understanding previously discussed applies only to MISL's continuing commitment to pay plaintiff's base salary and does not apply to any other benefits.

IT IS THEREFORE ORDERED that:

(1) Plaintiff's motion for summary judgment is [*9] granted as to the claim for the remainder of his annual base salary and denied as to his claims for other benefits.

(2) Defendants' motion for summary judgment is denied.

(3) The clerk of the court will enter judgment in favor of plaintiff and against defendant in the amount of $23,250.00.